FARMERS' & MERCHANTS' NATIONAL BANK OF LAKE CITY
v. MOORE *ET AL.*

(133 S. E., 913)

1. Insurance.—If mortgagor, after executing mortgage requiring insurance policy, takes insurance payable to himself, mortgagee has equitable lien thereon in event of loss.

2. Insurance.—Mortgagee has equitable lien on proceeds of policy payable to purchaser, assuming mortgage requiring insurance.

3. Insurance.—Where purchaser assumed payment of half of mortgage requiring insurance, mortgagee is entitled to lien to that extent on insurance taken out in purchaser's name.

4. Insurance.—Assignee of mortgage requiring insurance on premises is entitled to lien on proceeds of insurance. payable to owner to extent of mortgage.

Before Wilson, J., Williamsburg, December, 1924. Reversed, and remanded. Action by the Farmers' & Merchants' National Bank of Lake City against C. V. Moore and others. Decree for defendants, and plaintiff appeals.

The report of the referee, and order of the Circuit Judge adopting it, are as follows:

Special Referee's Report

To the Honorable, the Court of Common Pleas:

This is a proceeding to foreclose a mortgage. A separate report fixing the amount and rank of liens involved in this case has been made and filed, and the present report deals only with the disposition of the fire insurance money deposited in my hands.

The facts giving rise to the controversy may be stated as follows:

J. Ed. Coker foremerly owned a tract of 79 acres of land in this County. On the 30th day of August, 1919, the same was subdivided into two parcels and sold: 31.23 acres to E. P. McKnight and 47.77 acres to C. V. Moore. The sale was made subject to a mortgage from J. Ed. Coker to the

Federal Land Bank of Columbia, S. C., which Federal Land Bank mortgage was assumed *pro tanto* by McKnight and Moore. On the day of the purchase, Moore made two mortgages: one to the Bank of Lake City for $2,376.31 and the other to W. M. Severance and Ashton H. Williams for $1,578.80, While E. P. McKnight made his mortgage to the executors of the will of A. H. Williams in the sum of $1,-353.93. The Bank of Lake City mortgage was assigned to the plaintiff herein, and the Williams and Severance mortgage was assigned to the defendant, the First National Auction Company.

In the deeds from Coker to Moore and from Coker to McKnight will be found the following provision:

"The said premises are conveyed subject to a mortgage of the above-described premises and of the parcel of 31.23 acres (47.77 acres), * * * the said mortgage being in favor of the Federal Land Bank of Columbia, S. C., and is for the principal sum of fifteen hundred ($1,500.00) dollars, payable in thirty-five (35) annual payments and the said grantee above named hereby agree to assume and pay one-half (½) of said mortgage indebtedness as a part of the consideration of this conveyance, the one-half (½) of said indebtedness having been deducted from the purchase price of said premises. The remaining one-half (½) of said mortgage indebtedness is this day assumed by the purchaser of the said" other tract.

In the mortgage from Coker to the Land Bank is found the following insurance clause:

"And it is covenanted by and between the said parties that the said J. Ed. Coker and his heirs, executors, administrators or assigns, will insure and keep insured to the satisfaction of the Federal Land Bank of Columbia, S. C., all buildings and improvements now on said premises, the value of which was a factor in determining the amount of the loan secured hereby, against loss or damage by fire or wind storm, in such sum or sums as may be required by the Federal Land Bank

of Columbia, and in such company or companies as may be
opproved by the Federal Land Bank of Columbia, its succes-
sors or assigns, the loss, if any, to be payable to the Federal
Land Bank of Columbia, as its interest may appear at the
time of the loss, and will deliver said policy or policies òf
insurance to the Federal Land Bank of Columbia and will
promptly pay when due all premiums for such insurance.
In case any insured buildings or improvements on said prem-
ises are destroyed or damaged by fire or wind storm, the
sum or sums collected from said insurance may at the op-
tion of the said J. Ed. Coker be applied either to the payment
of the note secured by this mortgage or subject to regulations
of the Federal Farm Loan Board and under the direction of
the Federal Land Bank of Columbia to the reconstruction of
the buildings or improvements so destroyed or damaged."

In the mortgages made by C. V. Moore to the Bank of
Lake City and to Williams and Severance will be found the
following provisions:

"And it is agreed by and between the parties hereto that
the said mortgagor,——heirs, executors or administrators
shall keep the buildings erected or to be erected on said
premises insured against loss and damage by fire for the
benefit of the said mortgagee, for an amount not less than
——dollars, in such company as shall be approved by the said
mortgagee and shall deliver the policy to the said mortgagee,
and in default thereof, the said mortgagee, ——, or assigns,
may effect such insurance and reimburse themselves under
this mortgage for the expenses thereof with interest thereon
from, the date of its payments. And it is further agreed
in the event of other insurance and contribution
between the insurers that the said mortgagee,——, or assigns
shall be entitled to receive from the aggregate insurance
moneys to be paid, a sum equal to the amount of the debt
secured by this mortgage."

After C. V. Moore had purchased the premises in question,
had assumed the covenants of J. Ed. Coker made in his

mortgage to the Federal Land Bank of Columbia, and had executed the mortgage to the Bank of Lake City and to Williams and Severance, to wit, on the 5th day of February, 1921, he obtained a policy of fire insurance upon the dwelling house on said premises situate, in the sum of $1,800, for a premium of $31.50, with the loss payable to himself as insured; the value of the house so insured is fixed in the policy at $2,500. Thereafterwards, the said house was destroyed by fire and the loss was adjusted between C. V. Moore and the insurance company at $1,750, the agreed insurable value of the house at the time of its destruction by fire.

This suit was instituted by the Farmers' & Merchants' National Bank of Lake City for the foreclosure of the mortgage made by C. V. Moore to the Bank of Lake City, and to collect the insurance under the covenants in the mortgage. The defendant C. V. Moore resisted the efforts of the plaintiff bank to obtain the benefit of this insurance, and therefrom arises the controversy.

An order of reference has been made directing me to take and report the testimony, together with my findings of fact and conclusions of law thereon. Pursuant to this order, I have held a reference at which I was attended by the parties and their counsel. I have taken such testimoy as was offered and herewith report the same to the Court.

The plaintiff contends:

(a) That the covenant to insure for the benefit of the Land Bank contained in its mortgage from Coker, was assumed by Moore, and the taking of insurance by Moore on the mortgaged premises must be referred to this covenant and entitles the plaintiff bank to an equitable lien upon the proceeds of the policy.

(b) That the mortgage to the bank contains a full and complete covenant, even though the blank spaces be not filled in, which requires Moore to insure for the benefit of the bank and that the policy must be referred to this covenant, and

that therefore plaintiff is entitled to an equitable lien upon the proceeds from the policy.

(c) That the mortgaged premises being insufficient to pay the liens without the proceeds of this policy, it would be inequitable, in the absence of any evidence to the contrary to disregard the covenants in the mortgages.

(d) That the mortgaged premises being insufficient to pay the lien without the proceeds of the insurance and the mortgagor having covered the improvements for the full insurable value thereby precluding the plaintiff from taking any additional insurance for its protection, it would be inequitable, in the absence of any evidence to the contary, to disregard the covenants in the mortgage.

The defendant, C. V. Moore, contends:

(a) That the clause in the Land Bank mortgage is inapplicable and cannot insure to the benefit of the plaintiff

(b) That the failure to fill in the blanks in the insurance clause in the bank's mortgage shows there is no covenant to insure for its benefit.

(c) That the evidence as to the value of the land and the insurable value of the improvements is irrelevant, improperly admitted, and fails to establish the right of the plaintiff to collect the insurance.

(d) That the contract between Moore and the insurance company is purely personal, made for the sole benefit of Moore, and that the plaintiff is entitled to no benefit arising out of it.

It is conceded that the real estate, consisting of 79 acres, at the present time has sufficient value to pay the mortgage to the Land Bank without the insurance, and the Land Bank therefore makes no question. The insurance company has paid the money into Court for the benefit of whoever is entitled to it, therefore, makes no question.

The sole question, therefore, is between the plaintiff bank and the defendant C. V. Moore, whose respective contentions,

as hereinbefore stated, now come before me for determination.

Before proceeding to consider these contentions, I propose to state the principle of law, which I conceive to be applicable to this case. Mr. Chief Justice McIver, in writing the opinion for the Court in the case of *Swearingen v. Insurance Co.*, 52 S. C., on page 315; 29 S. E., 723, lays down the principle as follows: "While a policy of insurance is purely a personal contract between the insurer and the assured, and hence a mortgagee of the premises insured, merely as such, has no interest, either in law or equity, in a policy of insurance taken out by the mortgagor in his own name and for his own benefit, yet if the mortgagor is bound, either by covenant in the mortgage or otherwise, for example, by a valid verbal agreement, to keep the property insured as a further security for the payment of the mortgage debt, then the mortgagee is entitled to an equitable lien upon the money due on the policy of insurance, even though taken out in the name of the mortgagor."

The applicable rules are more fully stated to the same effect in 14 R. C. L., commencing at Section 536, where it is said: "It is settled by many decisions in this County that if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have on equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed." *Wheeler v. Factors' & Traders' Ins. Co.*, 101 U. S., 439; 25 L. Ed., 1055; *Hyde v. Hartford Fire Ins. Co.*, 70 Neb., 503; 97 N. W., 629; 113 Am. St. Rep., 796; *Ætna Ins. Co. v. Thompson*, 68 N. H., 20; 40 A., 396; 73 Am. St. Rep., 552; *Cromwell v. Brooklyn Fire Ins. Co.*, 44 N. Y., 42; 4 Am. Rep., 641.

"And this equity exists although the contract provides that in case of the mortgagor's failing to procure and assign such insurance the mortgagee may procure it at the mort-

gagor's expenses." *Wheeler v. Factors' & Traders' Ins. Co.,*
101 U. S., 439; 25 L. Ed., 1055; *Hyde v. Hartford Fire Ins.
Co.,* 70 Neb., 503; 97 N. W., 629; 113 Am. St. Rep., 796.

"Of course the mortgagee's equity will be governed by
the scope and object of the agreement; as, if the agreement
be to insure for a certain amount the equity will not apply
beyond that amount, and as its object is to afford better
security for the payment of the debt it will not be enforced
further than is necessary for such security; if the debt is
abundantly secured by the property which remains liable
to the mortgage, a Court of chancery would properly decline
to enforce it." *Wheeler v. Factors' & Traders' Ins. Co.,*
101 U. S., 439; 25 L. Ed., 1055.

Again at Section 185 of the same work, it is said:

"A mortgagee, merely as such has no interest either in
law or equity, in a policy of insurance effected by the
mortgagor on the mortgaged premises for his own benefit
in the absence of any covenant or agreement requiring the
latter to insure for the benefit of the former."

"And such a covenant or agreement creates an equitable
lien on the insurance money in favor of the mortgagee,
though the policy is in the name of and payable to the mort-
gagor, and has not been assigned by him to the mortgagee."
*Wheeler v. Factors' & Traders' Ins. Co.,* 101 U. S., 439; 25
L. Ed., 1055. *American Ice Co. v. Eastern Trust & Banking
Co.,* 188 U. S., 626; 23 S. Ct., 432; 47 L. Ed., 623; 25 L.
R. A., 305, note; *Hyde v. Hartford Fire Ins. Co.,* 70 Neb.,
503 ; 97 N. W., 629; 113 Am. St. Rep., 796. *McDonald
v. Black's Adm'r,* 20 Ohio, 185; 55 Am. Dec., 448; 118 Am.
St. Rep., 972, note; 135 Am. St. Rep., 745, note.

"And though the mortgage contains a provision that the
mortgagee, in default of insurance by the mortgagor may
effect insurance at the mortgagor's expense." *Hyde v. Hart-
ford Fire Ins. Co.,* 70 Neb., 503; 97 N. W., 629; 113 Am.
St. Rep., 796.

Therefore, the plaintiff must point to a covenant or
agreement to insurer for its benefit before it may recover.

Under the circumstances of the case, it is my opinion that the plaintiff has failed to do so, and I reach this conclusion for the following reasons:

First. In the mortgage from J. Ed. Coker to the Federal Land Bank is the following provision: "And it is covenanted, by and between the said parties, that the said J. Edward Coker, his heirs, executors, administrators or assigns, will insure and keep insured, to the satisfaction of the Federal Land Bank of Columbia, all the buildings and improvements now on said premises, the value of which was a factor in determining the amount of the loan secured hereby against loss or damage by fire or wind storm, in such sum or sums as may be required by the Federal Land Bank of Columbia, and in such company or companies as may be approved by the Federal Land Bank of Columbia, its successors or assigns, the loss, if any, to be payable to the Federal Land Bank of Columbia as its interest may appear at the time of the loss, and will deliver said policy or polices of insurance to the Federal Land Bank of Columbia, and will promptly pay when due all premiums for such insurance."

There is no evidence that the building which was destroyed by fire "was a factor in determining the amount of the loan," or that the Federal Land Bank ever "required" insurance in any sum on said building, or that it at any time designated or approved any company in which said building should be insured, or that the delivery of a fire insurance policy on said building was requested or demanded by the Federal Land Bank. Therefore I am of the opinion that the Federal Land Bank, if it claimed the insurance money, would not, under the provisions of its mortgage, be entitled to it—of course, if the Federal Land Bank itself is not entitled to it under its own mortgage, the plaintiff could not have any right to it under the mortgage of the land bank.

Second. I do not think that the provision in the mortgage from C. V. Moore to Bank of Lake City relied upon by plaintiff amounts to an agreement on the part of the mort-

gagor to insure for the benefit of the mortgagee because: (a) All the other paragraphs of the mortgage are filled out and this one is left blank, which clearly indicates that it was not the intention to rely upon it. (b) The amount of the insurance to be taken out was not fixed. (c) No company was designated by the mortgagee or its successor, or (d) the delivery of an insurance policy was not demanded although about three years expired between the date of the mortgage and the time the house was destroyed by fire, and (e) neither the mortgagee nor its assignee availed itself of the right under said provision to take out insurance themselves. (f) The whole evidence clearly shows to my mind that at the time the mortgage was given in 1919, when the price of land was very high, the Bank of Lake City thought that the land was sufficient security without the insurance.

I therefore find as matters of fact:

1. That there was no agreement on the part of C. V. Moore to insure for the benefit of plaintiff or its predecessor in interest.

2. That the defendant C. V. Moore is the owner of and entitled to receive the said sum of $1,750, the proceeds of said fire insurance policy, now on deposit in this Court.

Respectfuly submitted.

John D. Britton, Referee.

### Decree

This was an action for the foreclosure of a mortgage made by the defendant C. V. Moore to the Bank of Lake City, under date August 30, 1919, for $2,376.31. The facts of the case are as follows:

The defendant J. Ed. Coker formerly owned a tract of 79 acres of land in Williamsburg county. On the 30th day of August, 1919, the same was divided into two parcels; one parcel containing 31.23 acres and was conveyed to E. P. McKnight, and the other parcel containing 47.77 acres was conveyed to the defendant C. V. Moore. The sale was made subject to a mortgage from the said J. Ed. Coker to the

defendant the Federal Land Bank of Columbia, S. C., in the sum of $1,500, which mortgage was made and dated the 26th day of August, 1918. The conveyance from Coker to McKnight and Moore recited the assumption of the proportionate part of the Land Bank mortgage by each of said grantees.

On the day of the purchase, the defendant C. V. Moore made two mortgages: the mortgage herein first mentioned to the Bank of Lake City for $2,376.31, and the other mortgage to W. M. Severance and Ashton H. Williams for $1,578.80 while E. P. McKnight made his mortgage to the executors of the will of Asbury H. Williams in the sum of $1,353.93. The mortgage to the Bank of Lake City was assigned to the plaintiff herein, and the mortgage to Williams and Severance was assigned to the defendant the First National Auction Company, while the mortgage from E. P. McKnight was assigned by the Williams' executors to the Coe-Mortimer Company.

The mortgage from Moore to the Bank of Lake City also included another tract of land containing 42⅛ acres, which is in no wise involved in the Land Bank mortgage or transaction.

There appears to be no dispute or contention of any kind with respect to the mortgages, their rank and priority, or the amounts due thereon. The referee, to whom this matter was referred, has made a report establishing the amounts, rank, and priority of the mortgages, to which no exception has been taken, and the said report so filed and dated the 23d day of August, 1924, is hereby confirmed adopted, and made the judgment of this Court.

Upon the hearing before me, the plaintiff entered into an agreement with the defendant the Federal Land Bank to pay the Land Bank the amount due it and take an assignment of its mortgage; and, this having been concluded, the money paid, and the mortgage delivered, the same is hereby con-

firmed, and all of the rights of the Federal Land Bank under the said mortgage are hereby confirmed in the plaintiff.

After the conveyance had passed and the mortgages executed and recorded, it appears that the defendant C. V. Moore obtained a policy of fire insurance upon the dwelling house situate upon that part of the Coker property purchased by Moore and covered by the Land Bank mortgage, the mortgage to the Bank of Lake City, and the mortgage to Severance and Williams, for the full insurable value thereof, and that the house was destroyed by fire, whereupon the loss was adjusted at $1,750; but before the money could be paid to the defendant C. V. Moore, the plaintiff made claim to it under its mortgage. The fire insurance company was joined as a party defendant, but by agreement of counsel and under order of Court the action was dismissed as to the insurance company, upon the payment by it the sum of $1,750 to the clerk of the Court of Williamsburg County. It appears in evidence that the mortgaged premises are of insufficient value to pay the mortgage debts against the same without this fund.

This question was also reported on by the referee, who reached the conclusion that the defendant C. V. Moore was entitled to the money, and it came before me on exceptions to this report. I have studied the record and the arguments of counsel thereon; and, while, I am inclined from my personal views to order the money paid to the plaintiff, I feel that the case of *Swearingen v. Hartford Insurance Co.,* in 52 S. C., 309; 29 S. E., 722, and 56 S. C., 355; 34 S. E., 449, hold to the contrary; and, for this reason the exceptions to the referee's report upon this question I overrule.

It is therefore ordered, adjudged, and decreed:

1. That the clerk of the Court of Common Pleas for Williamsburg County do hold in his hands the insurance money deposited with him until the Supreme Court shall have passed upon this question or until an order be filed with him dismissing the appeal of the Farmers' & Merchants'

National Bank of Lake City or some further order be made in the case. * * *

*Mr. Phillip H. Arrowsmith,* for appellant, cites: *Case distinguished:* 52 S. C., 309.

*Mr. Iredell Hilliard,* for respondent, cites: *Mortgagee with out right to claim proceeds of policy underwritten for the mortgage unless assigned to him:* 101 U. S., 426; 10 Peters, 507. *Insurance policy is personal contract between insurer and insured:* 108 S. C., 61; 64 S. C., 413; 52 S. C., 309; 19 Cyc., 885.

July 13, 1926.

The opinion of the Court was delivered by Mr. Justice Cothran.

This action was originally instituted for the purpose of foreclosing a mortgage executed by the defendant C. V. Moore to Lake City Bank on August 30, 1919, to secure a note for $2,376.31, past due. The record fails to state who were the other defendants in the case, but it is assumed from various portions of the record that they were the Federal Land Bank of Columbia and the Dixie Insurance Company, for reasons which will appear.

It appears that in August, 1919, one J. Ed. Coker owned a tract of land in Williamsburg County, containing 80 acres; that on August 30, 1919, he divided the tract into two parts, one containing 31.23 acres and the other 47.77 acres; he sold the one to E. P. McKnight and the other to the defendant C. V. Moore. At that time there was an outstanding mortgage upon the 80 acres executed by Coker to the Federal Land Bank of Columbia for $1,500. This mortgage contained the following provision for insurance:

"And it is covenanted by and between the said parties that the said J. Ed. Coker and his heirs, executors, administrators or assigns, will insure and keep insured to the satisfaction of the Federal Land Bank of Coulmbia, S. C., all buildings and improvements now on said premises, the

value of which was a factor in determining the amount of the loan secured hereby, against loss or damage by fire or windstorm, in such sum or sums as may be required by the Federal Land Bank of Columbia, and in such compay or companies as may be approved by the Federal Land Bank of Columbia, its successors or assigns, the loss, if any, to be payable to the Federal Land Bank of Columbia, as its interest may appear at the time of the loss, and will deliver said policy or policies of insurance to the Federal Land Bank of Columbia and will promptly pay when due all premiums for such insurance. In case any insured buildings or improvements on said premises are destroyed or damaged by fire or windstorm, the sum or sums collected from said insurance may at the option of the said J. Ed. Coker be applied either to the payment of the note secured by this mortgage or subject to regulations of the Federal Farm Loan Board of Columbia and under the direction of the Federal Land Bank of Columbia to the reconstruction of the buildings or improvements so destroyed or damaged."

The deed from Coker to Moore contained the following provision:

"The said premises are conveyed subject to a mortgage of the above-described premises and of the parcel of 31.23 acres (47.77 acres), * * * the said mortgage being in favor of the Federal Land Bank of Columbia, S. C., and is for the principal sum of fifteen hundred ($1,500.00) dollars, payable in thirty-five (35) annual payments and the said mortgagee above named hereby agrees to assume and pay one-half (½) of said mortgage indebtedness as a part of the consideration of this conveyance, the one-half (½) of said mortgage indebtedness having been deducted from the purchase price of said premises. The remaining one-half (½) of said mortgage indebtedness is this day assumed by the purchaser of the said," other tract.

It does not appear that Coker took out any insurance upon

the property while he owned it, as he was obligated to do under the Federal Land Bank mortgage.

When Moore acquired the property conveyed to him by Coker, he executed two mortgages upon it; one to the Bank of Lake City for $2,376.31, and one to Severance and Williams for $1,578.80. The mortgage to the Bank of Lake City was upon a printed form which contained the regular insurance form; the blank space upon which for the amount of insurance, however, was not filled out.

On February 5, 1921, Moore applied for and obtained a policy in the Dixie Fire Insurance Company for $1,800 insurance upon the dwelling house. The Bank of Lake City afterwards went into liquidation, and the plaintiff Farmers' & Merchants' National Bank became the owner by assignment of the note and mortgage. A some time thereafter, during the life of the policy, the dwelling house was destroyed by fire, and the loss under the policy was adjusted at $1,750. Thereafter the Farmers' & Merchants' National Bank instituted the present action for the foreclosure of the mortgage executed by Moore to the Bank of Lake City and to subject the proceeds of the insurance to the payment of its mortgage. Whether the insurance company was a party defendant to this action does not distinctly appear, though we assume that it was, from the statement in the "case" that after the commencement of the action the insurance company paid the adjusted insurance, $1,750, into the hands of the clerk of Court, who still holds the funds pending the determination of the right thereto.

The several defendants answered setting up their respective claims by way of liens against the mortgaged premises, and all of these matters have been settled and the land sold. The only remaining issue in the case is that between the Farmers' & Merchants' National Bank and the respondent Moore, as to the right to the proceeds of the insurance in the clerk's hands.

The case was referred to John D. Britton, Esq., who filed

a report holding that the respondent Moore was entitled to the insurance money. Upon exceptions to this report, his Honor, Judge Wilson, filed a decree confirming it. In his decree this statement occurs:

"Upon the hearing before me, the plaintiff entered into an agreement with the defendant Federal Land Bank to pay the Land Bank the amount due it and take an assignment of its mortgage; and, this having been concluded, the money paid and the mortgage delivered, the same is hereby confirmed and all of the rights of the Federal Land Bank under the said mortgage are hereby confirmed in the plaintiff."

From this decree the plaintiff bank has appealed upon exceptions, which raise practically the only issue in this appeal —who is entitled to the insurance fund, the plaintiff bank, or the defendant Moore?

Considering first the rights and obligations of the Federal Land Bank and the original mortgagor Coker, growing out of the relations between them created by the mortgage from Coker to that bank: The mortgage contained the insurance clause which has been set forth above. And while Coker did not respond to the obligation imposed upon him by that clause and the Federal Land Bank did not enforce it, it is clear that if Coker had taken out a policy of insurance and had made the loss payable to himself, the bank would have had a equitable lien upon the insurance money, in the event of loss by fire. As is said in 14 R. C. L., 1367:

"It is settled by many decisions in this country that if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed."

See, also, *Swearingen v. Ins. Co.*, 52 S. C., 309; 29 S. E., 722. *Wheeler v. Factors' & T. Ins. Co.*, 101 U. S., 439; 25 L. Ed., 1055.

27—S. C.—135.

Now, if Moore had bought the entire property, and had assumed the payment of the mortgage which Coker had executed to the Federal Land Bank, he would have assumed all of the obligations contained in that mortgage; he would have stepped into the shoes of Coker; and the bank would have acquired a lien upon the insurance proceeds although the policy may have been made payable to Moore.

In 1 Jones, Mtg. (6th Ed.) p. 771, it is said:

"The assumption of the mortgage covers all the incidents of the mortgage debt, as for instance a stipulation for the payment of an attorney's fee in case of foreclosure; or a covenant to pay all taxes on the mortgage and on the mortgaged property."

In 27 Cyc., 1347, it is said:

"A purchaser assuming a mortgage takes the incumbrance as it stands, subject to all its conditions and limitations."

"Where a grantee assumes a mortgage on the property granted, his liability depends on, and is coextensive with, the personal liability of his grantor." *Howard v. Robbins*, 67 App. Div., 245; 73 N. Y. S., 172.

In *Johnson v. Northern Minnesota Land & Investment Co.*, 168 Iowa, 340; 150 N. W., 596, it is held (quoting syllabus):

"A purchaser of land subject to a mortgage thereon, which he assumes to pay, thereby assumes the mortgage according to its terms, including a stipulation for insurance for the benefit of the mortgagee, and insurance procured by the purchaser inures to the benefit of the mortgagee."

"The liability of a bank which has assumed a mortgage is measured by the terms thereof." *Kinyon Ins. Co., v. Bank,* 69 Mont., 282; 221 P., 286.

"Successor bank, by assuming mortgage debt of predecessor bank, became bound by all conditions of mortgage deed, such as a covenant to insure, with option to declare

debt due for breach." *People's Sav. Bank v. Jordan,* 200 Ala., 500; 76 So., 442

"Avendee, assuming an existing trust deed or mortgage, takes the incumbrance as it stands, subject to all the conditions touching the mortgage debt." *Merrimon v. Parkey,* 136 Tenn., 645; 191 S. W., 327.

In *Farmers' Loan & Trust Co. v. Penn Plate Glass Co.,* 186 U. S., 434; 22 S. Ct., 842; 46 L. Ed., 1234, the question whether the grantee or the mortgagor, who had taken out insurance for his own benefit, was responsible to the mortgagee for the proceeds of the insurance, was decided in favor of the grantee upon the specific ground that there was no obligation upon the mortgagor, in the mortgage, to take out insurance for the protection of the mortgagee, and no evidence of a personal assumption of the mortgage by the grantee. The implication is clear that if both these conditions existed there would be no doubt of his liability. The Court says:

"The Penn Company [the grantee and the insured] had the right to insure its own interest, and unless there was some contractual obligation on its part on the subject, which bound it, or some conduct on its part, or on the part of Kann, its immediate grantor, which would estop it from setting up the fact that it had procured the insurance for itself, the moneys arising out of the contracts which it made with the various insurance companies, cannot be taken from it and bestowed on the complainant for the benefit of the bondholders secured by the mortgage in suit."

It is a common, if not invariable, condition in a fire insurance policy that a change in the title to the property insured will avoid the policy. If therefore the grantee of the premises, who has assumed the mortgage debt, may be allowed to take out insurance payable to himself and collect it for himself, he will by the change of title have avoided the outstanding insurance which the mortgagor has taken out for the protection of the mortgagee and repudiated

an incidental obligation in the mortgage which he assumed when he assumed its payment. In the deed, however, from Coker to Moore, the latter assumed the payment of only one-half of the mortgage to the Federal Land Bank, and, of course, is not liable beyond that limitation.

The Federal Land Bank should be decreed entitled to a lien upon the insurance fund to the extent of one-half of the amount due upon the Coker mortgage to it; and that would inure *pro tanto* to the benefit of the Lake City Bank mortgage which is owned by the Farmers' & Merchants' National Bank.

It appears, however, from the foregoing extract from the circuit decree, that the plaintiff bank has bought, paid for, and had assigned to it, the Federal Land Bank mortgage, which assignment, by the decree, has been confirmed and "all of the rights of the Federal Land Bank are hereby confirmed in the plaintiff," and is therefore entitled to what the Federal Land Bank would have been entitled. as above stated.

The interests of the assignee of the mortgage executed by Moore to Severance and Williams do not appear to have been considered in the decree or in the appeal. What effect the failure of the assignee to appeal from the decree may have upon those interests is not before the Court.

The judgment of this Court is that the decree of the circuit Court be reversed, and that the case be remanded to that Court for further proceedings in harmony with the conclusions herein announced.

MESSRS. JUSTICE BLEASE and STABER concur.

MR. CHIEF JUSTICE GARY, (dissenting) : In ruling upon the exceptions of the appellant to the report of the referee, his Honor, the circuit judge, says:

"The referee, to whom this matter was referred, has made a report establishing the amounts, rank, and priority of the mortgages, to which no exception has been taken, and the said report so filed and dated the 23d day of August, 1924,

is hereby confirmed, adopted, and made the judgment of this Court."

The report of the referee and the order of the circuit judge adopting it will be incorporated in the report of the case; and for the reasons therein stated the judgment of the circuit Court should be affirmed.

MR. JUSTICE WATTS concurs.