**In re William Jennings LARYMORE, Jr., Debtor.**

**W. Ryan HOVIS, Trustee, Plaintiff,**

**v.**

**NEW HAMPSHIRE INSURANCE CO., Marvin J. Garris, Serv–Equip, Inc., Porter Brothers, Inc., Homelite Division of Textron, Inc., Huski Power Outdoor Equipment, Inc., Hooks & Williams, Sumter Small Engine Repair, Inc., Heyward Pritchard, and Tilton Manufacturing, Defendants.**

**Bankruptcy No. 86–01160.
Complaint No. 86–0359.**

United States Bankruptcy Court,
D. South Carolina.

Dec. 4, 1987.

**5.** *See, In re Carolina Wood Preserving, Ltd.,* Case No. 83–01586 (Bankr.D.S.C. Unpublished Opinion January 24, 1984).

W. Ryan Hovis, Hovis & Duncan, Rock Hill, S.C., for trustee.

Craig S. Kelly, Columbia, S.C., for defendant Homelite.

Mark S. Barrow, Collins & Lacy, Columbia, S.C., for defendant New Hampshire Ins. Co.

Jay Bender, Belser, Baker, Barwick, Ravenel Toal & Bender, Columbia, S.C., for defendant Porter Bros.

Julio E. Mendoza, Jr., Robinson, Mendoza, Barton & McCarthy, P.A., Columbia, S.C., for defendant Garris.

E. Lee Armstrong, St. Paul, Minn., for defendant Commercial Credit.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Chief Judge.

The plaintiff, who is the trustee in the above captioned case, brought this adversary proceeding seeking, *inter alia*, a determination of the rights of the several defendants to insurance proceeds paid as a result of a fire that destroyed certain assets of the bankruptcy estate.

### FACTS

1. The plaintiff seeks: (1) a declaratory judgment regarding the rights of the parties to the insurance proceeds pursuant to 28 U.S.C. § 2201 (1984); (2) the turnover of property of the estate pursuant to 11 U.S.C. § 542(b);[1] and (3) a determination, pursuant to § 506(a), of the status of the

---

1. Further references to the Bankruptcy Code shall be by section numbers only.

claims filed as secured by the parties to this adversary proceeding.

2. The debtor, William Jennings Larymore, Jr., filed for relief under chapter 7 of the Bankruptcy Code on April 10, 1986, and the plaintiff, on the same day, was appointed to serve as the trustee in this case.

3. Prior to the filing of the petition for relief, the debtor conducted business as Marion Outdoor Power and Equipment Company and owned equipment and inventory associated with the business.

4. On or about April 10, 1985, the above-mentioned equipment and inventory were destroyed by fire. The New Hampshire Insurance Company, one of the defendants in this adversary proceeding, insured the equipment and inventory which was destroyed by the fire. Pursuant to the consent order of February 6, 1987, and this court's judgment dated February 9, 1987, the New Hampshire Insurance Company paid the sum of $50,000. to the plaintiff in satisfaction of claims which arose from the loss caused by the fire. Pending a determination of the rights of the parties, the plaintiff holds the $50,000. of insurance proceeds.

5. In June of 1984, the debtor purchased the business known as Marion Outdoor Power and Equipment Company from Marvin J. Garris (Garris), who is one of the defendants in this adversary proceeding. Having financed a portion of the sale of the business to the debtor, Garris entered into a security agreement with the debtor on June 18, 1984, which covered all of the assets which were subsequently destroyed by the fire. While this security agreement of June 18, 1984 is supported by a U.C.C.–1 financing statement filed in Marion County, the county in which the business was located, no U.C.C.–1 financing statement was filed with the South Carolina Secretary of State. As of August 1, 1986, the debtor, pursuant to the June 18, 1984 security agreement, owed $24,665.47 plus accrued interest to Garris.

6. In accordance with the terms of the June 18, 1984 security agreement, the debtor purchased a property insurance policy from the New Hampshire Insurance Company. While the insurance policy insured the debtor's business premises and contents, the insurance policy named Garris as the loss payee.

7. Serv–Equip, Inc., a defendant in this adversary proceeding, held a security interest in a boring machine which was destroyed by the fire on April 10, 1985. To perfect its security interest, Serv–Equip, Inc., filed a U.C.C.–1 financing statement with the South Carolina Secretary of State on April 6, 1984. Serv–Equip, Inc. has assigned its claim for the loss of the boring machine to Commercial Credit Services Corporation (Commercial Credit), another defendant in this adversary proceeding. The claim for the loss of the boring machine which has been assigned to Commercial Credit is valued at $2,653.53.

8. Prior to the debtor's purchase of the business known as Marion Outdoor Power and Equipment Company from the defendant Garris, Garris had purchased Marion Outdoor Power and Equipment Company from Porter Brothers, Inc., another defendant in this adversary proceeding. In its financing of the sale to Garris, Porter Brothers, Inc., entered into a security agreement with Garris which covered, in part, all equipment, all inventory presently owned or after acquired, and any insurance proceeds therein. A U.C.C.–1 financing statement in the name of "Marvin Garris, d/b/a Marion Outdoor Power and Equipment" and filed with the South Carolina Secretary of State on December 13, 1979, supported the security agreement. On November 11, 1984, Porter Brothers, Inc., filed a continuation statement for the U.C.C.–1 financing statement just described.

9. At the time of the fire, the only equipment on hand that was sold by Porter to the debtor was a lawnmower valued at $400.

10. While Garris owned Marion Outdoor Power and Equipment Company, he purchased and financed inventory from the Homelite Division of Textron (Homelite). Homelite is another of the defendants in this adversary proceeding. On May 11, 1982, Homelite filed a U.C.C.–1 financing statement with the South Carolina Secre-

tary of State which supported a security agreement covering inventory purchased from Homelite. While this security agreement covered proceeds of collateral, it did not cover insurance proceeds. This U.C. C.-1 financing statement was filed in the name of "Marvin Garris, d/b/a Marion Outdoor Power and Equipment."

11. The following defendants are in default and have no claim to the insurance proceeds: Huski Outdoor Equipment, Sumter Small Engine Repair, Inc., and Tilton Manufacturing.

12. The defendant, Hooks & Williams, and the defendant, Heyward Pritchard, assert no claim to the insurance proceeds.

13. In June of 1984, Garris sold Marion Outdoor Power and Equipment to the debtor. This sale occurred without the consent or knowledge of Homelite or Porter Brothers, Inc.

## ISSUES

To be determined are the relative priorities in the insurance proceeds amongst the following parties to this adversary proceeding: the plaintiff, Garris, Commercial Credit, Porter Brothers, Inc., and Homelite.

## THE PLAINTIFF'S POSITION

The plaintiff seeks, in part, a declaratory judgment, pursuant to 28 U.S.C. § 2201 (1984), regarding the rights of the parties to the insurance proceeds.

In order to have an interest in the insurance proceeds superior to his, the plaintiff, as trustee, contends that each defendant must: (1) be named loss payee on the insurance policy, and (2) have a perfected security interest in the collateral which was destroyed by the fire. Positing that none of the defendants meet both requirements, the trustee argues that he, as trustee, pursuant to § 544, has an interest in the insurance proceeds superior to all other parties in this adversary proceeding.

## GARRIS'S POSITION

Garris disputes the plaintiff's contentions. For the following reasons, he argues that his failure properly to perfect his

security interest in the collateral which was later destroyed did not impair his interest in the insurance proceeds: (1) the determination in South Carolina of the rights of the parties in the insurance proceeds is not made under the rules of perfection set forth in Article 9 of the Uniform Commercial Code; (2) at the time the debtor obtained the fire insurance, Garris held an insurable interest; (3) the debtor's insurance policy named Garris loss payee; and (4) no other party to this adversary proceeding has an interest in the insurance proceeds which is equal to, or superior to, Garris's interest.

In summary, Garris asserts that his interest in the insurance proceeds is superior to the interests of the plaintiff, Commercial Credit, Porter Brothers, Inc., and Homelite.

## DISCUSSION

For the reasons which follow, the court concludes: (1) the interest of Garris in the insurance proceeds is superior to the interests of the plaintiff, Commercial Credit, Porter Brothers, Inc., and Homelite and (2) all insurance proceeds remaining after payment of the Garris claim should go to the plaintiff.

South Carolina Code § 36–9–104(g) (1976) states that Article 9 of the Uniform Commercial Code, which governs secured transactions, does not apply "to a transfer of an interest or claim in or under any policy of insurance...." The court is not aware of any case law in South Carolina interpreting the language just quoted. The Official Comment for S.C.Code § 36–9–104(g) (1976) states:

> Rights under life insurance and other policies ... are often put up as collateral. Such transactions are often quite special, do not fit easily under a general commercial statute and are adequately covered under existing law....

While the exact meaning of S.C.Code § 36–9–104(g) (1976) may not be clear, several relevant issues relating to insurance proceeds have been settled in South Carolina.

An insurance policy is a purely personal contract between the insurer and the insured, and hence a mortgagee of insured property has no interest, either in law or in equity, in a policy of insurance obtained by the mortgagor in his own name and for his own benefit. *Swearingen v. Hartford Insurance Co.*, 52 S.C. 309, 29 S.E. 722 (1898). If, however, the mortgagor covenants in the mortgage to keep the property insured as further security for the payment of the mortgage debt, then the mortgagee is entitled to an equitable lien upon the insurance proceeds, even though the policy is in the name of the mortgagor alone. *Id.; Blackwell v. State Farm Mutual Automobile Insurance Co.*, 237 S.C. 649, 118 S.E.2d 701 (1961).

*Freshwater v. Colonial Production Credit Ass'n.*, 286 S.C. 387, 334 S.E.2d 142, 144 (Ct.App.1985), *cert. denied,* (Dec. 10, 1985).

### A

#### Homelite and Commercial

■ While the filing of financing statements in compliance with Article 9 of the Uniform Commercial Code determines the priority of security interests as between creditors, the determination, in South Carolina, of the rights of the parties in the insurance proceeds is not made under the rules of perfection set forth in Article 9 of the Uniform Commercial Code. Therefore, neither Commercial nor Homelite has any interest in the insurance proceeds. While Commercial and Homelite each held perfected security interests in certain inventory destroyed by the fire, none of their security instruments mentioned insurance or insurance proceeds; neither Homelite nor Commercial was named a loss payee in the insurance policy; and neither Homelite nor Commercial alleged or produced evidence of an oral agreement to insure. A lienholder, in the absence of a covenant to insure, is not entitled to proceeds of insurance covering loss of his security. *Crook v. Hartford Fire Insurance Co.*, 175 S.C. 42, 178 S.E. 254 (1935).

### B

#### Garris

■ As to whether Garris has an insurable interest in the property which was destroyed by the fire, the court, noting that a mortgagor and mortgagee have separate and distinct insurable interests in the same property, *Brant v. Dixie Fire Ins. Co.*, 179 S.C. 55, 183 S.E. 587 (1935), *Laurens Federal Savings and Loan Ass'n. v. Home Ins. Co. of New York*, 242 S.C. 226, 130 S.E.2d 558 (1963), does not agree with the plaintiff that Garris's failure to properly perfect his security interest left him without an insurable interest. Despite any avoiding powers which the trustee may have pursuant to § 544, the fact that Garris failed to perfect does not mean that he is no longer a creditor of the debtor; it merely means that his lien may be avoided. Should the lien which Garris holds in the property destroyed by the fire be avoided, Garris would remain a creditor of the debtor, albeit an unsecured creditor.

"It may be said, generally, that any one has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction." *Crook v. Hartford Fire Ins. Co.*, 175 S.C. 42, 178 S.E.2d 254, 257 (1935), citing 14 R.C.L. 910. The existence of the property insured by the debtor provides a source for the repayment of monies owed to Garris.

■ Therefore, the court concludes that Garris, having an insurable interest in the property insured by the debtor, and being the named loss payee in the insurance policy, holds an interest in the insurance proceeds.

### C

#### Porter Brothers, Inc.

■ While an agreement to insure may give rise to an equitable lien, *Swearingen v. Hartford Ins. Co.*, 52 S.C. 309, 29 S.E. 722 (1898), *Blackwell v. State Farm Mut. Auto Ins. Co.*, 237 S.C. 649, 118 S.E.2d 701 (1961), this rule does not apply to the

present facts. *Blackwell* at 118 S.E.2d 704, states:

It is well settled that if the mortgagor is bound by covenant in the mortgage or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property damaged or destroyed. *Swearingen v. Hartford Fire Ins. Co.*, 52 S.C. 309, 29 S.E. 722; *Farmers' & Merchants' National Bank of Lake City v. Moore*, 135 S.C. 391, 133 S.E. 913, 47 A.L.R. 1001; Annotation 92 A.L.R. 559. On page 561 of this annotation, it is stated: "This equitable lien arises solely from the unperformed contract to protect, the theory being that since equity regards as done that which ought to have been done, if the mortgagor, having so covenanted, fails to make the insurance payable to the mortgagee, or to assign the same, the fund arising therefrom is within the operation of the maxim.

In the present controversy, the debtor and Porter Brothers, Inc., had never made a contract regarding insurance. There being no contract and no privity between the debtor and Porter Brothers, Inc., there can be no unperformed contract upon which to base an equitable lien. A policy of insurance is purely a personal contract between the insurer and the insured. *Swearingen v. Hartford Ins. Co., supra.* Here the debtor is the "insured".

The definition recognized in the cases is that the insured, under a contract of insurance upon property or health and accident insurance, is the person in whose favor the contract is operative and who is indemnified against, or is to receive a certain sum upon the happening of a specified event or contingency.

43 Am.Jur.2d, *Insurance*, § 187 (citations omitted).

The debtor obtained a policy of insurance which named Garris loss payee.

The general rule is that a mortgagee has no right to the benefits of a policy of insurance effected by the mortgagor on the mortgaged premises for his own benefit, in the absence of an assignment of the policy to the mortgagee, or of an agreement requiring the mortgagor to make such an assignment or to insure for the benefit of the mortgagee.... A different rule prevails, however, in regard to a policy making the loss payable to the mortgagee, in which case the policy is regarded as having been at its inception assigned to the mortgagee with the consent of the insurance company.

55 Am.Jur.2d, *Mortgages*, § 276 (citations omitted).

Although Garris may have agreed to obtain insurance for the benefit of Porter Brothers, Inc., the court, upon the breach of such an agreement, may not impose an equitable lien on the insurance proceeds which arose from the insurance policy obtained by the debtor. Therefore, Porter Brothers, Inc., holds no rights in the insurance proceeds.

### D

### *The Plaintiff*

It must now be determined what rights the plaintiff, as trustee, has in the insurance proceeds, and whether the plaintiff's rights are superior to those of Garris.

The plaintiff, as trustee, is afforded certain rights and powers by § 544, which states, in part, as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the com-

mencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; ....

In the absence of a covenant to insure, a lien holder is not entitled to proceeds of insurance covering loss of his security. *Crook v. Hartford Fire Ins. Co.*, 175 S.C. 42, 178 S.E. 254 (1935); *see* previous discussion of S.C.Code § 36–9–104(g) (1976), page 9 herein. Therefore, § 544 gives the plaintiff no right to the insurance proceeds; however, this is not to say that the plaintiff has no rights to any of the insurance proceeds.

 The court finds no basis upon which to give the plaintiff rights in the insurance proceeds which would defeat the rights held by Garris; however, the rights which Garris holds do not extend over the entire $50,000. of insurance proceeds. When the debtor purchases insurance coverage to protect the rights of the mortgagee, the mortgagee has an insurable interest, but may not recover more than the amount of the mortgage debt, up to the amount of the insurance coverage. *Brant v. Dixie Fire Ins. Co.*, 179 S.C. 55, 183 S.E. 587 (1935). Therefore, by operation of the insurance contract in conjunction with the security agreement between Garris and the debtor, Garris is vested with rights in the insurance proceeds up to $24,665.47 plus accrued interest (*See* Fact No. 5). The insurance proceeds which remain become part of the debtor estate. It must be remembered that the debtor is the "insured", and he should be allowed the benefit of his bargain with the insurance company. Furthermore, S.C.Code § 38–9–190 (1976) states, in part:

> [I]n case of total loss by fire the insured shall be entitled to recover the full amount of the insurance, and in case of partial loss, the insured shall be entitled to recover the actual amount of the loss, but in no event, more than the amount of money stated in the contract.

## CONCLUSIONS

Commercial, Homelite and Porter Brothers, Inc., have no interest in the insurance proceeds. The claim of Garris to the insurance proceeds should be paid first, ahead of the plaintiff, and all insurance proceeds remaining after payment of the Garris claim should go to the plaintiff.

The plaintiff in this adversary proceeding seeks (1) a declaratory judgment regarding the rights of the parties to the insurance proceeds pursuant to 28 U.S.C. § 2201 (1984); (2) the turnover of property of the estate pursuant to 11 U.S.C. § 542(b); and (3) a determination, pursuant to § 506(a), of the status of the claims filed as secured by the parties to this adversary proceeding.

In reaching a decision with regard to the plaintiff's first request, this court has found that the determination in South Carolina of the rights of the parties in the insurance proceeds is not made under the rules of perfection set forth in Article 9 of the Uniform Commercial Code. All collateral which served to secure the claims of Commercial, Homelite, and Porter Brothers, Inc., and any other named defendant, has been destroyed by the fire (Fact No. 4). Inasmuch as there is no collateral or proceeds of collateral, the court concludes that all claims filed as secured by the defendants in this adversary proceeding are unsecured. The court, however, reiterates its holding that of all parties to this adversary proceeding, Garris holds the superior rights to the insurance proceeds.

As the plaintiff now holds the $50,000. of insurance proceeds, it is unnecessary to address the plaintiff's request for the turnover of property of the estate pursuant to § 542(b).

## ORDER

Therefore, IT IS ORDERED, ADJUDGED AND DECREED that:

1. Commercial, Homelite, and Porter Brothers, Inc., have no interest in the insurance proceeds;

2. The claim of Garris to the insurance proceeds shall be paid first, ahead of the plaintiff;

3. All insurance proceeds which remain after payment of the Garris claim shall go to the plaintiff.