18291

Robert L. JOHNSON, Respondent, v. FIDELITY & GUARANTY COMPANY, Appellant

(140 S. E. (2d) 153)

206

*Messrs. Joseph L. Nettles,* of Columbia, and *Norton &
Norton,* of Marion, *for Appellant,*

*Messrs. Gasque & Seals,* of Marion, *for Respondent,*

January 12, 1965.

Moss, Justice.

This is an action by Robert L. Johnson, the respondent herein, against the Fidelity & Guaranty Insurance Company, the appellant herein, on a fire insurance policy.

The cause came on for trial before the Honorable G. Badger Baker, Presiding Judge of the Twelfth Circuit, and a jury, at the 1963 May term of the Court of Common Pleas for Marion County. At the conclusion of the evidence, the trial Judge ruled that the issues presented were solely legal ones for the decision of the Court. Thereupon, the jury was excused and the matter was taken under advisement. Thereafter, by order dated October 16, 1963, the trial Judge found for the respondent. The case is before this Court upon timely exceptions to the order of the trial Judge.

It appears from the record that in September, 1960, the respondent entered into an agreement with Shell Homes, Inc. for the purchase and erection of a "hulled" in or shell type home. This type of home has furnished exterior walls, roof and underpinnings, but the interior, plumbing, flooring and other essentials have to be furnished and installed by the owner. This shell type home was delivered and constructed by Shell Homes, Inc. upon the premises of the respondent for a contract price of $3,270.00. The respondent did not make a down payment but executed a note and mortgage to Shell Homes, Inc. which provided for the retirement of the contract price by the payment of seventy-two monthly installments of $82.75 each.

It appears from the record that on October 3, 1960, a policy of fire insurance, covering the house in question, was procured by Shell Homes, Inc., mortgagee, from the Atlantic Casualty & Fire Insurance Company, naming the respondent as the insured with the loss payable clause to the said mortgagee. Presumably the premium for this said policy was

added to the mortgage indebtedness of the respondent to Shell Homes, Inc. The value, fixed in this policy was $3,500-.00 covering the home in its "hulled" in or shell condition. This value was agreed upon by the mortgagee and the insurer. The respondent, at the time of the execution of the note and mortgage heretofore referred to, had no equity in the dwelling because he had not invested any money therein.

After Shell Homes, Inc. had erected the "hulled" in dwelling upon the premises of the respondent, he completed the dwelling at a cost of $4,000.00. The respondent testified that he spent $3,500.00 of his own money and borrowed $500.00 from Anderson Brothers Bank. On October 4, 1961, the appellant, at the request of the respondent, issued its contract of fire insurance to the respondent with the loss payable clause to Anderson Brothers Bank. This policy of fire insurance provided coverage in the amount of $4,000.00 on the said dwelling, and $1,000.00 insurance upon the contents thereof.

It is admitted that on December 26, 1961, that the aforesaid dwelling and its contents were destroyed by fire. At the time that the house was destroyed by fire, the two aforesaid policies were in force and effect. Respondent's claim for the loss of the dwelling was denied by the appellant and this action was brought. The answer of the appellant denied liability and asserted that by its contract of insurance the total amount of insurance on the dwelling should not exceed $4,000.00 and that in violation thereof there was at the time of the fire a total of $7,500.00 insurance on said dwelling. It further asserted as a defense that in no event would it be liable for more than the proportionate amount of its coverage, which said coverage bore to the total amount of insurance existing upon said dwelling at the time of said loss by fire.

The trial Judge held that the contract of insurance issued on October 3, 1960, by the Atlantic Casualty & Fire Insurance Company, although in the name of the respondent, was for the protection of the interest of Shell Homes, Inc., the mortgagee.

The trial Judge also held that the contract of insurance issued on October 4, 1961, by the appellant, was for the protection of the respondent's interest, which is separate and distinct from the interest of the mortgagee. He further held that there was a reasonable inference from the evidence that although the respondent knew the mortgagee had procured insurance, he did not know or realize that he was the named insured until after the fire on December 26, 1961.

The appellant poses two questions for determination by this Court and asserts that the two aforesaid fire insurance policies were concurrent insofar as such concerns the interest of the respondent in the insured dwelling.

This Court has held that a mortgagor and mortgagee have separate and distinct interests in the same property which they may insure. *Laurens Federal Savings & Loan Association v. Home Insurance Company,* 242 S. C. 226, 130 S. E. (2d) 558; *Brant v. Dixie Fire Ins. Co.,* 179 S. C. 55, 183 S. E. 587; *Murdaugh v. Traders & Mechanics Ins. Co.,* 218 S. C. 299, 62 S. E. (2d) 723. In the last case it was stated that the owner's interest in insured property and the mortgagee's interest therein are separate and distinct for insurance purposes.

The trial Judge has found, and there is evidence to support such, that the respective policies were intended to insure the separate interests of the owner and the mortgagee. Since this is a law case, we are bound by this finding of fact. *Bruce v. Blalock,* 241 S. C. 155, 127 S. E. (2d) 439.

The evidence in this case is conclusive that after this shell home was erected that the respondent completed the structure at a cost to him of $4,000.00. This was the exact amount of fire insurance that he purchased from the appellant for the protection of his interest in said dwelling. On the date that Shell Homes, Inc. purchased the Atlantic policy for the protection of its interest as mortgagee, there was due it the purchase price of $3,270.00 with interest to

accumulate, and other charges. The trial Judge found that the value fixed in the Atlantic policy of $3,500.00 represents the approximate value of the mortgagee's interest and was a value agreed upon by the mortgagee and the insurance company. We think it is conclusive that the appellant's policy insured the owner's interest and the Atlantic policy insured the mortgagee's interest.

The appellant argues that each of the aforesaid policies named the respondent as the insured therein and asserts that both contracts of insurance were between him and the respective insurers and insuring the dwelling against loss or damage by fire. The fact that the policy procured by the mortgagee was in the respondent's name is of no consequence because it covered only the mortgagee's interest. In *Mulkey v. United States Fidelity & Guaranty Co.*, 243 S. C. 121, 132 S. E. (2d) 278, we said: "Also, of no consequence is the fact that the policy procured by the mortgagee was in plaintiff's name as the policy covered only the mortgagee's interest."

A provision in a fire insurance policy limiting the amount of additional insurance to be carried is valid and the policy is avoided if the insured takes out additional insurance in excess of such amount. However, to constitute a breach of condition against additional insurance it must appear that the same property and the same interest are therein covered, and persons having distinct insurable interests in property may each have it insured without breaching such a clause. *Mulkey v. United States Fidelity & Guaranty Co.*, 243 S. C. 121, 132 S. E. (2d) 278. Here, there was no breach of said clause because the owner and mortgagee had separate and distinct insurable interests which each could protect by insurance.

As a further defense, the appellant contends that the two insurance policies constitute contributive or concurrent insurance, that the loss should be borne by both insurers and prorated between them on the basis of the amount of insurance written by each. Section 37-154 of the

Code. The cited Code section provides that two or more policies, "written upon the same property", shall be deemed and held contributive insurance, and if the aggregate sum thereof exceeds the agreed insurable value, each company in the event of loss "shall be liable for its prorata share of insurance." In *Murdaugh v. Traders & Mechanics Ins. Co.*, 218 S. C. 299, 62 S. E. (2d) 723, we said: "But it will be observed that the policies must be 'written upon the same property'; and evidently the word 'property' connotes the same *interest*."

In *Laurens Federal Savings & Loan* case we quoted with approval from *Lucas v. Garrett*, 209 S. C. 521, 41 S. E. (2d) 212, 214, 169 A. L. R. 660, the following:

" ' "Without undertaking to give an all inclusive definition of concurrent insurance, all the authorities agree that as a prerequisite to enforcing contribution between insurers, it is essential that both policies insure the same interest against the same casualty. 46 C. J. S., Insurance, p. 150, § 1207; 29 Am. Jur., Section 1334, page 998."

" 'The rule as stated in 29 Am. Jur., page 998, Section 1334, is also, we believe, directly applicable here: Contribution between insurers cannot be enforced unless their policies cover the same interest. Accordingly, if an owner and a mortgagee of the same property have procured insurance on their separate interests therein, and the owner seeks to recover on his policy, the defendant insurer is not entitled to contribution against the insurer of the mortgagee's interest.' "

Since, as a prerequisite to enforcing contribution between insurers, it is essential that both parties insure the same interest against the same casualty and, having found that the owner and the mortgagee procured insurance on their separate interests, the appellant was not entitled to contribution against the insurer of the mortgagee's interest.

The trial Judge held that if the respondent here receives any difference between the amount of his mortgage indebtedness to Shell Homes, Inc. and the face

amount of the policy held by said mortgagee, such amount should be prorated and taken into account in ascertaining the amount of the appellant's liability to the respondent. The appellant argues that such a holding was inconsistent with his previous holding to the effect that the Atlantic policy insured the interest of the mortgagee alone. This holding was favorable to the appellant and unfavorable to the respondent, and neither of them has filed any exception thereto. Assuming that the aforesaid holding is incorrect, such has become the law of the case because there is no appeal therefrom.

The judgment of the lower Court is affirmed.

TAYLOR, C. J., and LEWIS, J., concur.

BUSSEY, J., concurs in result.

BRAILSFORD, Justice (dissenting).

Affirmance of the judgment below rests, as it must, upon the view that the Atlantic Casualty fire insurance policy, procured by Shell Homes, Inc., the mortgagee, on a shell type dwelling constructed by it for Robert L. Johnson, the mortgagor, in which policy Johnson was named insured and for which he paid the premiums by inclusion in the mortgage, covered exclusively the interest of the mortgagee corporation. Otherwise, this insurance policy and the policy on which Johnson has been awarded judgment in this action, which was issued to Johnson on the identical property by Fidelity and Guaranty, the appellant, constitute concurrent insurance, and one or the other of the defenses based upon the existence of the former policy should be sustained. The conclusion that the Atlantic policy insured the mortgagee's interest exclusively is contrary to the terms of the writing, which clearly evidences a conventional contract of insurance, procured in an entirely conventional manner, promising indemnity to Johnson against loss by fire to the covered property. The mortgagee corporation is identified only in the standard mortgagee clause, by which it became a beneficiary of the contract but not a party to it. *Walker v. Queen Insurance Company,* 136 S. C. 144, 134 S. E. 263, 52 A. L. R. 259. I find nothing

in the record to justify holding that the Atlantic policy is not a contract to indemnify Johnson in case of loss by fire. Therefore, I respectfully dissent.

The trial court's determination that the Atlantic policy insured the mortgagee's interest exclusively cannot soundly be viewed as a finding of fact in a law case, as has been put forward. There, simply, is no evidence in the record bearing upon the intention of the parties in contracting for this insurance except the terms of the unambiguous policy. Hence, the usual rule that the construction of such an instrument is a matter of law for the court applies. Furthermore, the parties have stipulated that the judgment below turned on issues of law rather than of fact; quoting from the statement of the case: "At the conclusion of the evidence, Judge Baker ruled that the issues presented were solely legal ones for the decision of the Court."

If any other reason has been urged as justifying our refusal to construe the Atlantic policy, as to parties and subject matter, according to its terms, I have failed to grasp it. Certainly the universally accepted principle that a mortgagor and mortgagee have distinct insurable interests in the lien property which they *may* insure separately does not require or allow the assumption that this fire policy procured by the mortgagee, in the mortgagor's name and at his expense, insures the mortgagee's interest exclusively.

Upon the occurrence of a covered loss, the rights of the parties under a fire policy insuring mortgaged property as that of the owner, with loss payable to a mortgagee as his interest may appear, are markedly different from those which attach when the insurance is exclusively on the mortgagee's interest. In the former case, the owner is the insured and is entitled to indemnity for his loss, either by payment to him of the proceeds of insurance or by *credit* on the secured debt of such amount as may be paid to his creditor under the mortgagee clause. In the latter, the owner has no interest in the insurance proceeds and is not entitled to indemnity, regardless of whether the amount of insurance

exceeds the balance due on the mortgage at the time of loss, or whether the debt has then been paid in full. Nor is the owner entitled to credit on the mortgage debt for the amount paid to the mortgagee under such a policy. Indeed, the mortgagee and insurance company may contract that upon paying a covered loss, the insurance company will be subrogated to the mortgagee's rights against the mortgagor. See 36 Am. Jur., Mortgages, Section 332; 29A Am. Jur., Insurance, Section 1730; annotation, 11 A. L. R. 1295, 1299; 59 C. J. S. Mortgages § 328d(2) p. 453; 46 C. J. S., Insurance, § 1213.

The Atlantic policy was issued on October 3, 1960, and the premiums were paid at Johnson's expense for a year and a day before the Fidelity policy was issued. Yet, *under the construction adopted,* which, in all candor, must have been applicable from October 3, 1960, the effective date of the Atlantic policy, rather than from October 4, 1961, when the Fidelity policy was issued Johnson had no insurance protection during this year. This is a palpably erroneous view of the rights of the named insured under the Atlantic policy which, I confidently suggest, this court would not have countenanced for a moment had the loss occurred prior to October 4, 1961.

In my judgment, the decisions of this court which are relied upon to sustain the judgment appealed from are clearly distinguishable. *Murdaugh v. Traders & Mechanics Ins. Co.,* 218 S. C. 299, 62 S. E. (2d) 723; *Laurens Federal Savings and Loan Association v. Home Ins. Co.,* 242 S. C. 226, 130 S. E. (2d) 558; and *Thomas v. Penn Mutual Fire Insurance Company, S. C.,* 137 S. E. (2d) 856; each, involved two policies of fire insurance, one procured by the mortgagee and the other by the mortgagor, or by parties in similar relationship to each other, and in each case the defenses of the insurance company based upon the existence of concurrent insurance policies were overruled. The decisions in Murdaugh and in Thomas, that the policies involved insured the separate and distinct interests of the mortgagor and mortgagee, were

based on *evidence* that such was the intention of the parties. (No question of competency was raised.) In Murdaugh, the testimony indicated that "(t)he binder was requested solely for the purpose of the protection of the Association." In Thomas, the testimony was not included in the record on appeal and affirmance was based upon the assumption "that sufficient evidence was presented to support the concurrent finding that Thomas and the Chamberses intended to procure insurance on their separate interests." In Laurens, the same result followed a stipulation of the parties that one policy covered the interest of the mortgagee and the other that of the mortgagor, it thus appearing that one "policy was purchased to protect the interest of the Association and the other policy was purchased to protect the interest of Adams."

In this case, unlike those referred to above, the written instrument stands alone as evidence of the intention of the parties and should be construed according to the clear import of the language employed.